Opinion of the Court, by
Judge Owsi-ux-
Francis M’Connell sold and conveyed forty-throe acres and nineiy-eight poles of land, in (he vicinity of Le^ingjton^to Ijiunt.;yid Saunders, and. received from *220 them their several promissory notes, payable at diller-ent periods for the price.
The bill.
Hunt’s answer and Cross-bil.l.
To secure the payment of these notes, Hunt ami Saunders on the 18th of May, 1814, executed a deed of mortgage to M’Conncll for the tract of laud which had been sold and conveyed to them by M’Conncll. One of the notes which was executed by Saunders only, amounting to $905 57, was made payable in May, 1817, and the same not being paid on that day, suit was thereon afterwards commenced by M’Conne!!, and judgment at law recovered against Saunders for the amount of the note, wifh interest and costs.
M’Connell afterwards exhihited bis bill in equity against blunt and Saunders, for the purpose of foreclosing their equity of redemption in the mortgaged land, and to subject the land to sale in satisfaction of the judgment which he had recovered at law, upon the note against Saunders.
The bill was answered by Hunt, in which he charges that he has lately discovered, that at the time lie and Saunders purchased the land of M’Connell, it was incumbered by a mortgage which iiad been previously executed by M’Connell and the other children of Francis M’Connell, deceased, to the children ofHenry Marshall, deceased, for the purpose of indemnifying the heirs of Marshall against loss, in case a tract of five hundred acres of lapd, which had been sold by the ancestor of the M’Connells, to the said Henry Marshall, deceased, should be lost by an adverse interfering claim; jthat the five hundred acre tract which had been so sold, was, in fact, lost by a paramount claim; and that the heirs of Marshall had commenced and were prosecuting a suit in equity, for the purpose of foreclosing the equity of redemption held by the M’Connells in the mortgaged land, and to subject the same to sale for the purpose of indemnifying the heirs of Marshall against the lost land, in his answer, Hunt also states, ihal when the purchase was made from M’Connell by him and Saunders, they were ignorant, of the existence of the mortgage to the heirs of Marshal!, and charges M’Con-nell with fraudulently concealing the incumbrance from them. He moreover alleges, that the' land has greatly depreciated in value since the purchase from M’Con-neil, and charges that owing to the incumbrance, he lias been unable to dispose of the land at a saving price, &c. *221 He makes bis answer a cross-bill, and prays a cancelment of (be contract with M’Connell, &c.
M’Connell’s answer,
Decree of the CiVCUli court,
j -s t jiecessarj for the corn-elect au to yme óf (¡10 decree diestntCj whether to wiH.receive °r be afterwards done, There* dorse that he will receive banknotes, the sale shall be made at threemonths, otherwise at crodi^can not be’complained of by the defon-an ‘
*221 The cross-bill was answciod by M’Connell. Ho. mils the existence of the mortgage to the heirs of Marshall, acknowledges that he made no disclosure of the mortgage, at the time of making the sale to Hunt and Saunders; hut denies that he was actuated by any fraudulent design in not doing so. He states that the existence of the mortgage did not occur to him, whilst contracting with Hunt and Saunders, and if it had, he should not have deemed it important to name it, as he supposed Hunt and Saunders knew ofits existence, and as he was at all times able and willing to remove the incumbrance. He denies that the incumbrance has, at any time, affected the price of the land, or been the means of preventing Hunt and Saunders fropa selling it; and finally, he alleges that the heirs of Marshall have voluntarily released the land purchased by Hunt and Saunders, frorn the incumbrance, &c.
The court below pronounced a decree foreclosing Hunt and Saunders’equity of redemption, and ordering so much of the land as might be necessary to satisfy the judgment at law and. costs, to be sold at a credit of two years, unless M’Connell should endorse that he would receive in satisfaction of his demand, notes of the Bank of the Commonwealth of Kentucky, or notes of the Rank of Kentucky, and in case he should so endorse, the sale to be made at a credit of three mouths.
To reverse that decree, Hunt and Saunders have prosecuted this writ of error.
(1) The first error assigned, questions the propriety of the decree in allowing M'Connell an election, at a subsequent period, to endorse whether he would accept bank notes in satisfaction of his demand,
in that respect, however, no error is perceived, of which Hunt and Saunders have any cause to complain,
The act of assembly by which the court appears 1° have been governed in giving the election to cell, does not imperatively require the election to be made at the time ofpronouncing the decree, and no reason is perceived for so construing 1 he act, as not to allow the election lobe exercised alter the decree is rén-dered.
If the election be made before the property is sold, Hunt and Saunders will have derived the benefit of the *222 act, and, of course, when that is the case, they can haws no cause to complain.
(2) Estate mortgaged to secure the debt,is bound for die costs of an action at law, after-wards brought for the debt! for it is the principal and they its incidents.
(3) The omission of the alienor to disclose at the sale an incumbrance on the land, whore he is nót actuated by any frmi-purchaser rc-ceivosno injury from it, leased by tile incumbran-c®rbejjoro ing, is'no ground forei-thcr a rescis-oontraotor refusing a do-Cree foreclos-it's a mort-t^secura purchase money,
*222 (2) The next question that claims attention, involves the propriety of subjecting the land to the satisfaction of the costs of the suit at law.
The mortgage does not, in. terms, stipulate for the payment of costs; but it creates a lieii on the land for the payment of the debt, and as the costs have accrued *n conse<luence oi^ ^10 failure to pay the debt, it must be considered as an incident thereto, attaching itself to the debt,-and in equity, drawing with it the same lien that was created by the debt,
It was, therefore, correct, to subject, the land--to the satisfaction of the costs, in conjunction with the debt,
(3) But it is contended, that no relief ought to have freon decreed, either as to the principal debt or. costs, it is said, that in failing to disclose the incumbrance upon the land, at the time of the sale (0 Hunt and Saunders, M’Connell was guilty of a fraudulent suppression of the truth, and it is insisted, that in a court of equity,, he should not be relieved.
It should, however, be -remarked, that although Ill point of fact, M’Connell failed to make known the in-cumbrance to Hunt and Saunders, it is not probable that in omitting to do so, he was actuated by any fraudulent design. From the facts displayed in the record, it is quite evident, that the incumbrance was never considered by M’Connell, prior to his sale to Hunt and Saun-i ders, as forming any serious impediment to bis title, or of a character which could not, at any' time, be removed without inconvenience to himself. It is noljt’nerc-fore, presumable, that in failing to disclose an incuna-brance of that sort, M’Connell was actuated by an m-*-ent'on fo deceive or injure Hunt and Saunders. If* however, the incumbrance bad proved to be injurious to Hunt and Saunders, though M’Connell may not have freen aettaated by any improper motive in failing to discl°se it, their case would assume a much more imposing aspect; but there isnothing in the present case calculated to show, that in consequence of the incumbrance, any injury has been sustained by Hunt and Saunders, They appear not only' to have enjoyed the unmolested possession of the land, ever since they made, the pur-chasci but it is proved in the cause, that the heirs of Marshall, to whom the mortgage was executed by the *223 M’Connells, before the final decree in the court below, voluntarily released the incumbrance upon the land which M’Connell sold to Hunt and Saunders. It is true, the land is proved to have depreciated greatly in value, since it was sold by M’Connell-, but that depre-ciafion appears to have happened before Hunt was apprized (as he alleges) of the existence of the branee, so that from his own statements, it is impossible that the existence of the incumbrance can have prevented his selling the land to "others, before the price of land had depreciated.
(4) whene the joint ■ gage it for the debtor one of tlienh s« muon of the interest oi both (not that of tha fs may bone-cessary to pay the debt, ^eedto'be soid.
Haggin, for plaintiff; Hawes, for defendant.
Under circumstances like these, we cannot, therefore, admit that the aid of the court should be’ afforded to cancel the contract, or that it should be withheld from M’Gonnell, in his application to subject the land to the satisfaction of the 3ale money.
(4) But ifany decree favorable to M’Connell is made, it is contended that the interest in the land gained by Saunders under the purchase, should be first applied in satisfaction of the-judgment recovered upon the note executed by him only, and that it was incorrect to deCree the joint interest of both Hunt and Saunders, to be 0,1-1 c iu t sold tor that purpose.
It should, however, be recollected, that the record not only fails to show any separate interest in Saunders tp the land, but the mortgage purports to be the j°i.nt act of Hunt and Saunders, creating a security upon the entire tract, for the notes executed by each. .
In decreeing so much of the interest of both Hunt and Saunders to be sold, as might be necessary to pay the debt, therefore, the court acted in perfect conformity to the contract of the parties, and in strict accordance with the rules of equity.
The decree must be affirmed with Costs.